Argued and submitted September 20, 1999, affirmed January 12, 2000

THE CONFEDERATED TRIBES OF THE
SILETZ INDIANS OF OREGON,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Geneva A. Johnson,
*Respondents.*

(98-AB-2361; CA A104705 (Control))

THE CONFEDERATED TRIBES OF THE
SILETZ INDIANS OF OREGON,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Denise L. Peterson,
*Respondents.*

(98-AB-2362; CA A104746)

THE CONFEDERATED TRIBES OF THE
SILETZ INDIANS OF OREGON,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Lillie E. Butler,
*Respondents.*

(98-AB-2433; CA A104872)
(Cases Consolidated)

995 P2d 580

Craig J. Dorsay argued the cause for petitioner. With him on the briefs was Jennifer K. De Wald.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent Employment Department. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

No appearance by respondent Geneva A. Johnson.

No appearance by respondent Denise L. Peterson.

No appearance by respondent Lillie E. Butler.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

### BREWER, J.

■     Employer, the Confederated Tribes of the Siletz Indians of Oregon (Siletz), a federally recognized Indian tribe, 63 Fed Reg 71942 (1998), seeks consolidated review of three final orders of the Employment Appeals Board (EAB). The challenged orders awarded unemployment compensation benefits to three former members of Siletz's tribal council (claimants)[1] who were removed from office pursuant to a recall election. Siletz contends that EAB erred in concluding that claimants' services constituted employment, thus making them eligible for benefits under ORS chapter 657. We review EAB's findings of fact for substantial evidence, its legal conclusions for errors of law, and affirm. ORS 657.282; ORS 183.482(8)(a).

    In 1979, Siletz executed a written notice of election (1979 election) to become subject to ORS chapter 657, and the Employment Department (Department) approved that election. The election provided, in part:

> "[Siletz] being an employing unit under Oregon Department of Employment Law, but not an employer subject thereto, does hereby elect to become an employer subject to said law for all occupations and employments in which [Siletz] is now engaged or may hereafter engage, and hereby makes application for the written approval of this election by the Department."

The election also described Siletz's "occupation or business" as that of "conducting the business of an Indian Nation" and provided that a total of 11 employees would become subject to ORS chapter 657.

    Also in 1979, Siletz adopted a constitution establishing a tribal government in order to, among other things, protect its "inherent rights * * * as a sovereign Indian tribe." Article IV, section 1, of the Siletz Constitution, established a tribal council consisting of "nine members elected by the General Council to terms of three years" and generally vested the council with "legislative authority" for the tribe. The General

---

[1] None of the three claimants filed briefs or otherwise participated in this judicial review.

Council consists of all duly enrolled members of Siletz who are 18 years of age and older. Siletz Const, Art II, § 2. Each General Council member has the right to cast one vote for each vacancy on the tribal council. Siletz Const, Art VI, § 3.

In 1996 and 1997, claimants were elected to the tribal council. Claimants received an hourly wage for their services as council members. During their tenure as council members, claimants did not work for Siletz in any other capacity. In 1998, claimants were removed from office pursuant to a recall election. Following their removal, they each filed claims for unemployment insurance benefits.

Claimants Geneva Johnson and Denise Peterson filed their claims at the same time. Siletz disputed their claims, contending, among other things, that their service as elected council members was exempt from the definition of "employment"[2] by ORS 657.065.[3] The claims were heard by an administrative law judge (ALJ), who ruled in favor of claimants. In so deciding, the ALJ implicitly determined that ORS 657.065 does not exclude elected tribal council members from the definition of employment. Siletz sought review, and EAB affirmed the ALJ's decision.

The third recalled council member, Lillie Butler, filed her claim after the first two were filed. Butler's claim was heard separately. The ALJ concluded that, as a federally recognized tribe, Siletz was not subject to ORS chapter 657 in the absence of an election to become subject. At the time of

---

[2] ORS 657.030(1) (1977) defined employment as "service for an employer, including service in interstate commerce, within or outside the United States, performed for remuneration or under any contract of hire, written or oral, express or implied."

[3] ORS 657.065 (1977) provided, in part:

"(1) 'Employment' does not include service performed in the employ of the United States Government or any instrumentality of the United States * * *.

"(2) 'Employment' does not include services which are performed in the employ of the state or of any political subdivision or instrumentality of the state:

"(a) As an elected public official."

ORS chapter 657 (1977) was in force at the time of the 1979 election. The relevant statutes within that chapter have not been amended in any material respect since 1977. We refer to those statutes in their form at the time of the 1979 election, because the scope and effect of that election under the law as it then existed is at issue in this case.

the hearing, Siletz had no copy of the 1979 election, and the Department was unable to locate its copy. The ALJ noted the absence of evidence of a written election but nevertheless determined that Siletz had consented to coverage because it paid "employment taxes with expectation of coverage." The ALJ observed that ORS 657.065(2) exempted state and local elected public officials from the statutory unemployment insurance scheme. The ALJ determined that the exemption also applied to elected *tribal* officials. Accordingly, the ALJ concluded that Butler was not eligible for unemployment benefits.

The Department appealed that decision to EAB. At the hearing before EAB, the Department submitted a copy of Siletz's 1979 election. EAB took official notice of that election, determined that the legislature did not intend to exclude tribal council members from coverage by operation of ORS 657.065(2) and concluded, based on the 1979 election, that Butler was eligible for unemployment insurance benefits.

Siletz sought reconsideration of each of EAB's decisions, but EAB denied reconsideration. ORS 657.290(1). Siletz then filed a petition with this court and moved, pursuant to ORAP 2.30, for consolidation of the three cases. We granted that motion and consolidated the cases. On review, Siletz contests EAB's conclusion in each case that claimants "worked in employment subject to Chapter 657" by performing services as tribal council members.

The parties agree that because Siletz is a federally recognized Indian tribe, it is not subject to ORS chapter 657 in the absence of an election to be treated as such. *See Oklahoma Tax Com. v. Chickasaw Nation,* 515 US 450, 115 S Ct 2214, 132 L Ed 2d 400, 409 (1995) (a state is generally without power to tax tribal members within "Indian country"). The issues before us are whether Siletz was authorized to elect coverage as an employing unit under Oregon's unemployment compensation system and, if so, whether ORS 167.065 (1977) nonetheless prohibited election of coverage for tribal council members. Finally, if Siletz was not prohibited from electing coverage for tribal council members, then we must determine whether Siletz intended to include those persons within the scope of its 1979 election.

ORS 657.425(1) (1977) provided that

"[a]*ny employing unit*, for which services that do not consti-
tute employment as defined in [ORS Chapter 657] are per-
formed, may file with the assistant director [of the Depart-
ment] a written election that all such services performed by
individuals in its employ in one or more distinct establish-
ments or places of business shall be deemed to constitute
employment * * *." (Emphasis added.)

Siletz does not assert that it lacked inherent authority to sub-
ject itself voluntarily to Oregon law. *See* 25 USC § 476
(authorizing Indian tribes to negotiate with state govern-
ments).[4] *See also Chance v. Coquille Indian Tribe*, 327 Or
318, 321, 963 P2d 638 (1998) (Indian tribes may expressly
waive their sovereign immunity). Siletz also acknowledges
that it purported to elect coverage pursuant to ORS 657.425
and that the statute authorizes only employing units to elect
coverage; however, Siletz asserts that due to a "technicality"
it does not fit within the statutory definition of "employing
unit." Department responds that Siletz's argument "directly
conflicts" with the express terms of its 1979 election, in which
Siletz represented that is was an "employing unit under
Oregon Department of Employment Law."[5] For the following
reasons, we conclude that Siletz is an employing unit.

ORS 657.020(1) (1977) defined "employing unit" to
mean:

"(a)   *Any individual or type of organization * * *.*

"(b)   *This state*, including every state officer, board,
commission, department, institution, branch and agency of
the state government.

"(c)   Any *people's utility district.*

"(d)   Any *political subdivision."* (Emphasis added.)

It is readily apparent that Siletz does not qualify as an
employing unit under subsections (b)-(d) of the statute. Siletz

---

[4] All references to the United States Code in this opinion are those versions
that were in effect at the relevant times.

[5] Department makes no argument that Siletz is estopped or otherwise pre-
cluded from denying that it is an "employing unit" in light of its express assertion
in the 1979 election that it *was* an employing unit.

is not a state. ORS 657.010(9) (1977). *See White Mountain Apache Tribe v. Bracker*, 448 US 136, 142, 100 S Ct 2578, 65 L Ed 2d 665 (1980) ("tribes have retained a 'semi-independent position . . . not as States' "). Nor is it a "people's utility district" or "political subdivision" of the state. *See* ORS 657.097 (1977) (defines "political subdivision" for purposes of ORS chapter 657); *see also Confederated Tribes of the Warm Springs Reservation v. Kurtz*, 691 F2d 878, 880 (9th Cir 1982), *cert den* 460 US 1040 (1983) (Indian tribes are not political subdivisions of the State of Oregon). Because Siletz is obviously not an "individual," in order to be an "employing unit" it had to qualify, if at all, as an "organization."

ORS 657.020(1) (1977) provided that the term "organization" includes any

> "partnership, association, trust, estate, joint stock company, insurance company or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee, or successor thereof, or the legal representative of a deceased person, who has or had in its employ one or more individuals performing services for it within this state."

Siletz argues that it is not an organization because it possesses "inherent attributes of sovereignty" that the entities listed in the statute do not. We agree that Siletz possesses limited sovereignty that distinguishes it from business organizations. *See United States v. Mazurie*, 419 US 544, 557, 95 S Ct 710, 42 L Ed 2d 706 (1975). However, the examples of organizations listed in ORS 657.020(1) do not limit the meaning of the term. The statute merely provides that "organization" *includes* those examples, not that it *means* only similar types of entities. *See State v. Haynes*, 149 Or 73, 76-77, 942 P2d 295 (1997), *rev den* 328 Or 275 (1999) (what a statute includes describes in particular those things embraced by the term; whereas, what a statute means describes what a term is intended to signify). Furthermore, the examples listed in the statute are not incompatible with the inclusion of Indian tribes within the meaning of the term.

■ In its ordinary sense, "organization" means the "state or manner of being organized." *Webster's Third New Int'l Dictionary*, 1590 (unabridged ed 1993). "Organized" means "having * * * *formal governmental institutions*." *Id.*

(emphasis added). Siletz is organized in that sense, because it does have formal governmental institutions. Namely, Siletz has a tribal government that includes a tribal council and a tribal court. Siletz Const, Art IV, §§ 1, 2.

■     Siletz expressly asserted in its 1979 election that it was an "employing unit." To qualify as an "employing unit," Siletz had to satisfy one of the alternative definitions specified in ORS 657.020(1) (1977). We conclude that the plain and ordinary meaning of "organization" includes tribal governments and that, in 1979, Siletz was an "employing unit" qualified to elect coverage pursuant to ORS 657.425 (1977). We must therefore determine whether ORS 657.065 (1977) prohibited Siletz from electing coverage for its council members.

ORS 657.065 (1977) provided, in part:

"(1)   'Employment' does not include service performed in the employ of the United States Government * * *.

"(2)   'Employment' does not include services which are performed in the employ of the state or of any political subdivision or instrumentality of the state:

"(a)   As an elected public official.

"* * * * *

"(3)   The provisions of ORS 657.425 permitting election of coverage for services that do not constitute 'employment' do not apply to services performed as an *elected public official*." (Emphasis added.)

Siletz asserts that its council members are "elected public officials" within the meaning of ORS 657.065(3) and, as such, are ineligible for elective coverage under ORS 657.425.[6] Department responds that "[ORS 657.065(3)] is most sensibly read in * * * context to refer to an election under ORS 657.425(1) made by one of the entities mentioned in ORS 657.065(1) and (2), services for which are excluded from 'employment': federal and state governmental entities." Our resolution of the parties' disagreement poses a question

_____

[6] The parties agree that Siletz's election was made under ORS 657.425 (1977). We assume without deciding that they are correct. *But see* ORS 657.420 (1977).

of statutory construction. Because the legislature did not provide a definition of "elected public official," we first examine the plain and ordinary meaning of the term. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

■      A "public official" is a person who holds "political office." *Webster's Third New Int'l Dictionary* at 1836. To "elect" means "to select (a person) for *political office* by vote." *Id.* at 731 (emphasis added). Thus, an "elected public official" is a person who holds political office and who was selected for that office by vote. Claimants were selected as tribal council members by a vote of the General Council. Claimants therefore appear to be "elected public officials" within the dictionary meaning of the term, if the position of a tribal council member is a "political office."

        "Political" means "of or relating to government * * *, or the conduct of governmental affairs." *Id.* at 1755. "Office" means "a position of authority to exercise a public function." *Id.* at 1567. As such, a "political office" is a position of authority relating to the conduct of governmental affairs. Because Siletz possesses limited rights of tribal self-government, *White Mountain Apache Tribe*, 448 US at 143, and because the Siletz Constitution provides that its tribal council members are generally "empowered to exercise all legislative authority," claimants were in positions of authority relating to the conduct of Siletz's governmental affairs. Thus, the ordinary meaning of the term "elected public official" would appear to include Siletz's tribal council members.

■      Department responds that such a construction ignores the statute's context which, it asserts, reveals that the legislature did not intend for "elected public officials" to refer to any category of officials except for those employed by state and local governments and their instrumentalities. We agree that we may not simply rely on the dictionary definition of a statutory term as conclusive proof of the legislature's intent. *State v. Atkeson*, 152 Or App 360, 364, 954 P2d 181 (1998). We must construe the statute in its context, which includes other provisions of the same statute and other related statutes. *PGE*, 317 Or at 611.

Department argues that the legislature intended to forbid election of coverage only for *state* and *local* elected public officials under ORS 657.065(3) (1977), because ORS 657.065(2)(a) (1977) exempted only those elected public officials from mandatory coverage. Siletz does not dispute that the exemption in ORS 657.065(2)(a) (1977) is limited to state and local elected public officials. Instead, Siletz challenges the relevance of that subsection to the construction of ORS 657.065(3) (1977). Siletz contends that because ORS 657.065(3) (1977) does not expressly limit "its coverage to state or local elected public officials," it must encompass the entire meaning of the term, including tribal council members. We find the parties' analysis to be incomplete.

Neither party examines statutory context beyond the provisions of ORS 657.065 (1977). Statutory context is not limited to the current version of a statute; it also includes prior enacted versions. *Krieger v. Just*, 319 Or 328, 336, 876 P2d 754 (1994). ORS 657.065 (1975) is of particular importance here. That statute provided, in part:

"(2)  'Employment' does not include, *and nothing in this chapter shall be construed to authorize the state or any political subdivision to elect to* have services deemed to constitute employment which are performed in the employ of the state or of any political subdivision or instrumentality of the state by:

"(a)  Elected public officials." (Emphasis added.)

Unlike ORS 657.065(2)(a) (1977), the 1975 version of that subsection did not merely exempt elected public officials from mandatory coverage; it actually excluded them from elective coverage. Notably, the preface to subsection (2) limited both the exemption and exclusion to persons in the employ of *the state, its political subdivisions and instrumentalities*. Thus, ORS 657.065 (1975) *did not,* under any plausible construction, prohibit Siletz from electing coverage for its tribal council members.

For purposes of this case, there are four significant differences between the 1975 and 1977 versions of ORS 657.065. First, the legislature transferred the exact limitation in scope of ORS 657.065(2)(a) (1975) to the exemption of state and local elected public officials from "employment"

status under subsection (2)(a) (1977). Second, the exclusion of state and local elected public officials from elective coverage contained in ORS 657.065(2)(a) (1975) was moved to ORS 657.065(3) (1977); however, the 1977 Legislature did not explicitly restrict that exclusion to state and local government officials. Third, ORS 657.065(2) (1975) excluded nine categories of public employees from elective coverage. *See* ORS 657.065(2)(a)-(i) (1975). Each of those categories of employees was employed by *state and local* governments. The 1977 amendment reduced the scope of the exclusion to one category: elected public officials. ORS 657.065(3) (1977).[7] Fourth, subsection (4) was added by the 1977 Legislature, providing that, "[n]otwithstanding the provisions of ORS 657.025, 'employer' means any *state government or political subdivision employing unit.*" (Emphasis added.)

In light of the totality of the text and context of ORS 657.065(3), including the 1977 restructuring of the entire statute, two permissible inferences arise. First, it is possible, as Siletz argues, that the legislature intended to broaden the exclusion of "elected public officials" from elective coverage beyond the scope of state and local government officials. Alternatively, for the following contextual reasons, it is possible that the legislature did not intend for subsection (3) (1977) to apply to a broader range of elected public officials than was previously excluded.

First, with the arguable exception of subsection (3) (1977), both the 1975 and 1977 statutes provided exemptions from the statutory definition of employment and exclusions from elective coverage, only for federal, state and local government employees. In fact, the only *exemptions* listed in both versions were for various categories of such employees. Especially in light of the addition of subsection (4) to the statute in 1977, it is also plausible to infer that the legislature intended to retain that limitation in scope for the elected public official exclusion in subsection (3).

Subsection (4) established that *state and local* government employing units are "employers." Under ORS

---

[7] The amendment also converted what were exclusions from elective coverage to mere exemptions from "employment" for some of the other state and local government employee categories. ORS 657.065(2)(b)-(f) (1977).

657.025 (1977), an *employer* employs "one or more persons *in an employment* subject to [ORS chapter 657] * * *." (Emphasis added.) Thus, subsection (4) also established, by necessary implication, that state and local government employees are engaged in employment under ORS chapter 657, unless they are otherwise exempt under subsection (2). Only *state and local* elected public officials perform services that do not constitute employment under subsection (2)(a). Subsection (3) refers to elections made under ORS 657.425 to provide coverage for individuals performing services that do not constitute employment and prohibits such elections for elected public officials. Because subsections (2) and (4) deal exclusively with the employment status of individuals who perform services for state and local governments, it makes sense in the surrounding context of those subsections that the legislature had the same limitation in mind in excluding elected public officials whose services do not constitute employment from elective coverage in subsection (3).

Second, it would be illogical to presume that the legislature meant to exempt the specific category of elected *state and local* public officials from mandatory coverage and, yet, prohibit elective coverage for the broader category composed of *any* elected public official. In other words, if Siletz's interpretation were correct, then why not exempt all elected public officials from mandatory coverage in the first place, because all are ultimately excluded from elective coverage? That conundrum was created by the 1977 amendment, which, for the first time, uncoupled the exemption and exclusion into different subsections. As a result, the rearranged subsections interrelate in ways that do not make obvious sense if they are construed to refer to different categories of employees.

In light of the plausible alternative meanings suggested by its text and context, we conclude that ORS 657.065(3) (1977) is capable of more than one reasonable interpretation. Although not directly in point, the Supreme Court's decision in *State ex rel OHSU v. Haas*, 325 Or 492, 503, 942 P2d 261 (1997) reinforces our conclusion.

In *Haas*, the court construed the evidentiary attorney-client privilege found in OEC 503(1)(d)(B). In particular,

the court was required to determine whether OHSU faculty members constituted "employees" for purposes of the rule's definition of "representative of a client." The rule provided that " '[r]epresentative of the client' means a principal, an employee, an officer or a director of the client * * *." *Id.* The court concluded that it could not determine, at the first level of statutory construction, whether the term "employee" was limited to persons holding high ranking positions. The court recognized that, given its ordinary meaning, the term readily encompassed the faculty members. *Id.* The court also acknowledged that it could not " 'insert what has been omitted' from a statute. *PGE*, 317 Or at 611; ORS 174.010." *Id.* However, in the context of the other listed examples, consisting of principals, officers and directors, the court concluded that it was also plausible to infer that the legislature intended to restrict the meaning of employee to persons of similarly high rank. *Id.* Despite the fact that "employee" had no limiting adjective, in light of the principle of *ejusdem generis* the context of the statute rendered the text ambiguous. *Id.*

In this case, the term "elected public official" likewise has no further limiting adjective. However, for the reasons explained above, the remaining subsections of ORS 657.065 provide the context that renders the term ambiguous. We therefore turn to legislative history for additional evidence of its intended meaning. *See Koitzsch v. Liberty Northwest Ins. Co.*, 125 Or App 666, 669, 866 P2d 514 (1994) (a statute capable of more than one reasonable interpretation is ambiguous).

The amendments to ORS 657.065 (1975) originated in House Bill 2132. That bill was introduced at the request of the Employment Division in order to comply with "the mandatory and optional provisions" of Public Law 94-566 (1976). Testimony, House Labor Committee, HB 2132, February 7, 1977, Ex D (statement of Lee Russell, Tax Section, Employment Division). Russell testified as follows:

"[The Federal Unemployment Tax Act (FUTA), 26 USC §§ 3301 to 3310 (1976)] requires, effective January 1, 1978, that all states extend coverage to *state and local government employees* with certain exceptions. [ORS] 657.065,

which is the section being amended here, has apparently contained certain exclusions for government from unemployment insurance coverage. We are amending the exclusions to coincide with those that are permitted by federal law." Tape recording, House Committee on Labor, HB 2132, February 7, 1977, Tape 5, Side 1 (statement of Lee Russell, Tax Section, Employment Division). (Emphasis added.)

That testimony reveals that the focus of HB 2132 was on coverage of "state and local government employees" and was not concerned with tribal or other "public" employees. In fact, nothing in the history of House Bill 2132 indicates that the legislature intended to broaden any exclusions from coverage beyond the scope of state and local elected public officials.

Siletz nevertheless insists that, because the legislature intended to comply with FUTA by enacting HB 2132, it also meant to prohibit elective coverage for tribal officials. Siletz relies on an Internal Revenue Service ruling, which held that services performed by persons in their capacities as tribal council members do not constitute employment for purposes of FUTA. *See* Rev. Rul. 59-354. We disagree with the conclusion that Siletz reaches.

Siletz's premise that HB 2132 was intended to comply with federal law *is* accurate. As the Oregon Supreme Court observed in *Salem College & Academy, Inc. v. Emp. Div.*, 298 Or 471, 476, 695 P2d 25 (1985),

"The Congress that enacted [FUTA] in 1935 did not undertake to create a nationally administered unemployment compensation system. Whether by reason of constitutional misgivings, tradition or policy, the choice was to leave unemployment insurance programs to the states, but to impel them to adopt adequate programs whose costs individual states were reluctant to impose on their domestic enterprises for fear of placing them at a competitive disadvantage."

FUTA does not require states to maintain unemployment compensation programs; "it relies on the incentive not to expose the state's employers to a federal payroll tax without the credit allowed for a state tax." *Id*. Failure to meet federal standards does not violate federal law, nor does it invalidate the state law; instead, the state forfeits the federal benefit.

*Id.* at 477. In this case, if Oregon's unemployment compensation program did not conform to FUTA, then Oregon employers would not be entitled to a federal payroll tax credit for any contribution to Oregon's program.

Siletz argues that Department's interpretation of ORS 657.065(3) is in conflict with FUTA. However, FUTA does not require states to exclude elected tribal officials from unemployment coverage in order to maintain conformity with federal law. *See* 26 USC § 3304 (outlining conditions of approval of state laws). In fact, the only exemptions required by FUTA are those expressly contained in House Bill 2132, section 3, which were ultimately compiled and enacted in ORS 657.065(2)(a)-(j) (1977). *Compare* HB 2132, § 3, *with* 26 USC § 3309(b)(3)(A) to (E).

■    An Indian tribe may not have any obvious motive to elect coverage for its tribal council members, because it will not receive a federal tax credit for contributions paid to the state for such services. However, FUTA does not prohibit a tribe from *electing* to cover council members. *See Salem College and Academy, Inc.,* 298 Or at 476 (FUTA does not prevent state from extending the coverage of its unemployment insurance laws beyond federal limits); *see also* 25 USC § 476 (Indian tribes are authorized to negotiate with state governments).

In sum, the legislative history of ORS 657.065 (1977) indicates that the 1977 amendments were only intended to affect the coverage of state and local government employees and not to affect any other category of elected public officials, including those in the employ of Indian tribes. Accordingly, we conclude that ORS 657.065(3) (1977) did not prohibit Siletz from electing coverage for its tribal council members. The remaining question for decision is whether, in fact, Siletz elected such coverage.

■ ■    Whether Siletz elected coverage for its tribal council members is a question of fact. We review EAB's findings of fact for substantial evidence. ORS 183.482(8)(c); *Willamette Graystone Inc. v. Hammond,* 151 Or App 561, 563, 951 P2d 166 (1997). Substantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to

make that finding. *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990).

Siletz contends that EAB erred in two respects in finding that the 1979 election included council members. First, Siletz argues that because the election included a total of only 11 employees, it must have intended to limit the election to noncouncil members. Again, we disagree. The record does not disclose the total number of employees who worked for Siletz at the time of the election. Thus, it is not possible to determine from the number of employees for whom coverage was elected whether *any* employees were meant to be excluded. Therefore, the language of the election does not override EAB's finding.[8]

Siletz next asserts that it meant to elect coverage only for services that were otherwise subject to FUTA, which, it contends, exempts services performed by tribal council members from mandatory coverage. However, the express terms of the 1979 election belie Siletz's contention. In its election, Siletz made a broad election of coverage for *"all occupations and employments."* That election did not exclude services exempt from FUTA. Because Siletz expressly and unambiguously elected coverage for "all occupations and employments," EAB's finding that Siletz elected coverage for all of its employees, including tribal council members, is supported by substantial evidence.

Affirmed.

---

[8] Siletz argues, in a footnote to its brief on review, that if EAB had granted its request for reconsideration, then Siletz would have introduced affidavits by tribal members averring that the 11 employees for whom coverage was elected excluded tribal council members. In order to preserve the alleged error, Siletz was required to assign error in its opening brief to EAB's ruling denying reconsideration. *See* ORAP 5.45(2) (alleged error will not be considered on appeal unless it is assigned as error in the party's opening brief). We do not discuss it further.