On respondent's motion to dismiss appeal filed October 24, and appellant's response to state's motion to dismiss appeal filed October 27, 2005; resubmitted en banc July 12, motion to dismiss appeal denied December 20, 2006

## STATE OF OREGON,
*Respondent,*

*v.*

## JUAN JOSE ZAMORA-MARTINEZ,
*Appellant.*

C051006CR; A129382

150 P3d 25

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Douglas F. Zier, Assistant Attorney General for motion.

Stephanie Hortsch, Deputy Public Defender, *contra.*

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Schuman, Ortega, and Rosenblum, Judges.

EDMONDS, J.

Rosenblum, J., dissenting.

## EDMONDS, J.

The state moves to dismiss defendant's pending appeal in this case under ORAP 8.05(3). That rule provides:

"If a defendant in a criminal case, a petitioner in a post-conviction relief proceeding, a plaintiff in a habeas corpus proceeding, a petitioner in a parole review proceeding, or a petitioner in a prison disciplinary case, on appeal of an adverse decision, *escapes or absconds from custody or super-vision,* the respondent on appeal may move for dismissal of the appeal. If the appellant has not surrendered at the time the motion is decided by the court, the court may dismiss the appeal or judicial review."

(Emphasis added.) We deny the motion for the following reasons.

The state moves to dismiss defendant's appeal "because defendant-appellant has absconded from the juris-diction of the court and is a fugitive from justice." The motion is supported by a copy of a warrant for defendant's arrest and by an affidavit that incorporates defendant's probation offi-cer's report. That report indicates that defendant is subject to the general conditions of probation set out in ORS 137.540(1) and the following special conditions:

"1.　If deported not to reenter the US, if legally reenters contact PO within 30 days of entry[.]

"2.　Money Judgment of $365.00[.]"

We also know from the report that defendant was deported on July 1, 2005, and that, at the time that the report was written, it was believed that he had returned to the United States.[1]

---

[1] The state has not asked us to take judicial notice of any part of the trial court record. *See* OEC 201(d) ("A court shall take judicial notice if requested by a party and supplied with the necessary information."). There is, however, as part of the trial court file, a case registry entry for January 31, 2006. It states:

**"Arraignment Probation Vio**
ADMITS-MUST REPORT TO PROB
DEPT W/IN 24 HRS OF RELEASE
RELEASE THIS CASE TODAY"

(Boldface and uppercase in original.) The dissent notes that defendant admitted to a probation violation, apparently taking judicial notice, *sua sponte,* of the above entry. It acknowledges, however, that it is not clear from the record what condition

■     The issue framed by the state's motion is whether the record before us shows that defendant "absconded from supervision" within the meaning of ORAP 8.05(3).[2] Our rules of appellate procedure are subject to the ordinary rules of construction concerning administrative rules and statutes, as set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 612 n 4, 859 P2d 1143 (1993). One of the rules of construction that applies to ORAP 8.05(3) is that the words of the rule, unless specifically defined, are to be given their ordinary meaning. *See Alanis v. Barrett Business Services*, 179 Or App 79, 82, 39 P3d 880 (2002) (holding that in construing an administrative rule, we apply the same analytical framework applicable to the interpretation of statutes). To "abscond" in the context of the rule means to "evade the legal process of a court by hiding within or secretly leaving its jurisdiction." *Webster's Third New Int'l Dictionary* 6 (unabridged ed 2002). The word "supervision" in the context of the rule means the "direction, inspection, and critical evaluation" of another. *Id.* at 2296. The requirements that the rule imposes for dismissal are in the present tense. In other words, the language of the rule authorizes an appellate court to dismiss the appeals of those persons who have absconded while supervision is ongoing.

Defendant's argument in response to the state's motion to dismiss his appeal is straightforward: Although he may have been in violation of his probation during some of the time period mentioned in the probation officer's report, there is no indication in the report that he also absconded from ongoing supervision at any time. He points to the fact that his terms of probation do not provide for supervision after he was deported and that, even if he violated his conditions of probation by entering the United States illegally, he

---

of probation defendant admitted to violating. 210 Or App at 29 n 2 (Rosenblum, J., dissenting). Because the state has not provided any evidence to us on this issue, we are not willing to speculate about the circumstances of defendant's admission. Rather, as the movant for and the proponent of the dismissal of defendant's appeal, it is the state's burden to persuade us that the requirements of the rule are satisfied.

[2] No contention is made that he escaped from custody, the other ground under ORAP 8.05(3) for dismissal of an appeal.

was not under supervision at that time or at any time thereafter because his supervision by Washington County Community Corrections had ceased at the time of his deportation and had never recommenced. While conceding that he remained on probation subject to its terms and conditions after he was deported, he concludes that the record shows only that, from that time forward, he was on *unsupervised* probation; therefore, he argues, his appeal should not be dismissed under the express provisions of the governing rule that require that he has absconded from "supervision" as a predicate to dismissal.

We agree with defendant's argument. Based on the record before us, we cannot conclude that defendant absconded from *supervised* probation during the time that his appeal has been pending. The terms of his probation required him to contact a probation officer within 30 days of any legal reentry into the United States. They did not otherwise require him to report to a probation officer and abide by his or her direction after he was deported from the United States. That is, if defendant did not enter the country legally, he was not required to report to a probation officer and abide by the officer's direction. The evidence in the record does not establish whether he entered the country legally or illegally; thus, the state has failed to carry its burden to demonstrate that defendant absconded from supervision within the meaning of ORAP 8.05(3).

■ The dissent disagrees, insisting that defendant absconded from supervision within the meaning of ORAP 8.05(3) because he remained on supervised probation, even after he left the State of Oregon. In part, it reasons:

> "There is no argument that his probation had expired, and there is no indication in the record that his probationary status was ever changed, suspended, or terminated; thus, defendant remained on formal—that is, supervised—probation throughout the relevant time period."

210 Or App at 29 (Rosenblum, J., dissenting). With respect, the dissent's assertion improperly equates the concept of formal probation with the concept of supervised probation and

ignores not only the ordinary meaning of the word "supervision" in the rule but the facts in this case.[3] Under ORS 137.540(1), the "court may sentence the defendant to probation subject to the following general conditions unless specifically deleted by the court" including to "[r]eport as required and abide by the direction of the supervising officer." ORS 137.540(1)(o). Thus, it is possible under the statute for a defendant to be on formal probation without being supervised, where the court has specifically deleted the requirement of ORS 137.540(1)(o).

That is what happened here. The judgment contained a provision that was to supersede ORS 137.540(1)(o) in the event that defendant was deported. It provided, "If deported not to illegally reenter USA; if legally reenters, contact [probation officer] within 30 days of entry." After defendant was deported, his obligations to report were governed by that provision of the judgment. There is no evidence that the trial court directed Washington County Community Corrections to continue to supervise defendant while he was in a foreign country or that he was to be supervised by some agency of that country on behalf of Washington County, and there is no evidence in this record that, after defendant returned to the United States, his supervision by a probation officer recommenced. In the absence of some kind of arrangement for defendant to continue to be supervised after he was deported, the only reasonable inference from the record is that the trial court intended, as ORS 137.540 authorized it to do, to delete the requirement that defendant be supervised after he was deported.

Dismissal of an appeal under ORAP 8.05(3) requires more than the fact that the person is on probation and the fact that the person violates the terms of the person's probation. To agree with the dissent's reasoning would be to read the requirement of "supervision" out of the rule. A person cannot abscond from supervision unless that person is being

---

[3] The dissent contends that defendant's probation officer "certainly considered defendant to be on supervised probation." 210 Or App at 29 n 2 (Rosenblum, J., dissenting). It is the language of the judgment that determines whether defendant was on supervised probation, not the subjective belief of defendant's probation officer—or even defendant, for that matter.

supervised, and if the drafters of the rule had intended ORAP 8.05(3) to apply to unsupervised probation, they could have said so. Moreover, if defendant's probation conditions required him to report to a probation officer upon his return to the United States without qualification, and defendant then failed to report as required, dismissal of his appeal would be warranted. Those are not the circumstances of this case.

Beyond the authority granted to us by our own rule, there exists the inherent discretionary authority to grant the state's motion to dismiss defendant's appeal. *Pruett and Pruett*, 185 Or App 669, 677, 60 P3d 1094, *rev den*, 335 Or 443 (2003). We decline to exercise that authority in this case for the following reasons. All we know from the record presented to us by the state in support of its motion to dismiss is that defendant may have returned to the United States and a warrant was issued for his arrest. Under these circumstances, and without more evidence before us, we decline to exercise our inherent authority to dismiss defendant's appeal.

Motion to dismiss appeal denied.

**ROSENBLUM, J.,** dissenting.

I would find that defendant absconded from supervision, and I would dismiss this appeal.

Contrary to the majority's assertion, defendant was most certainly on supervised probation at the time of his return to the United States,[1] having been placed on formal

---

[1] Despite the fact that the trial court file indicates that, in January 2006, six months after defendant was deported, he was arraigned for, and admitted to, a probation violation, the majority reports only that "it was believed that [defendant] had returned to the United States." 210 Or App at 24. The majority notes that the state has not asked us to take judicial notice of any part of the trial court record, *id.*, and it evidently concludes that, because the state failed to do so, taking notice of the record is improper. *See id.* at 28 (declining to exercise the court's inherent authority to dismiss defendant's appeal because "[a]ll we know from the record presented to us by the state in support of its motion to dismiss is that defendant may have returned to the United States and a warrant was issued for his arrest"). I question whether examining the trial court file actually constitutes taking judicial notice, but even if it does, the majority's refusal to do so is misguided. The majority relies on OEC 201(d), which requires a court to take judicial notice if requested to do so by a party and supplied with the necessary information, but it ignores OEC 201(c), which provides, "A court may take judicial notice, *whether requested or not*."

probation for 18 months, with all the general conditions of probation as well as several special conditions. There is no argument that his probation had expired, and there is no indication in the record that his probationary status was ever changed, suspended, or terminated; thus, defendant remained on formal—that is, supervised—probation throughout the relevant time period. Even defendant concedes that "he remained on probation subject to its terms and conditions after he was deported * * *."[2] 210 Or App at 26.

The majority states that I "improperly equate[ ] the concept of formal probation with the concept of supervised probation * * *." *Id.* at 26. Aside from labeling my understanding as "improper," the majority is correct. In my view, to be on formal probation is to be under supervision.[3]

In arriving at its understanding of "supervision," the majority notes that, in construing statutes and rules, we are to give a word its ordinary meaning when the word is not specifically defined. That much I can readily agree with. I do not, however, agree with the majority's strict reliance on the dictionary definition of "supervision." This court has noted that dictionaries do not always reflect the intended meaning

---

(Emphasis added.) I agree with the majority's implicit admonition that, in a motion to dismiss an appeal, the state should make an effort to provide us with a better-developed record than we have in this case. Nevertheless, the majority should acknowledge, at the very least, that defendant did in fact return to the United States after being deported, not merely that he "may have returned."

[2] Defendant's probation officer certainly considered defendant to be on supervised probation. She filed an application for an arrest warrant alleging a violation of formal, supervised probation: failure to report. Based on her affidavit, the court issued an arrest warrant. Defendant appears to have understood the nature of his probation as well: Upon his arrest, he admitted to the violation. While it is not clear from the record exactly what defendant admitted to by way of a violation, it seems fair to assume that it was what was alleged: failure to report.

[3] Although more likely to occur in the context of "bench probation"—yet another form of supervised probation, *see* OAR 213-003-0001(1) (" 'Bench probation' means a probationary sentence, which directs the probationer to remain under the supervision and control of the sentencing judge.")—there might be instances when the defendant could be placed on formal probation and the sentencing court informs the defendant that he or she will not be held to any of the general conditions of probation beyond the requirement that the defendant obey all laws. *See* ORS 137.540(1)(j) (providing that a probationer shall "[o]bey all laws, municipal, county, state, and federal"). Even in such a case, the defendant is under supervision to the extent that the court monitors the defendant's criminal record with an eye toward new offenses. In any event, this is not one of those instances.

of a given term. *See Confederated Tribes (Siletz) v. Employ-
ment Dept.*, 165 Or App 65, 74, 995 P2d 580 (2000) ("We agree
that we may not simply rely on the dictionary definition of a
statutory term as conclusive proof of the legislature's
intent."). Rather, the "ordinary meaning" must be viewed in
the context in which the word is used. *See id.* ("We must con-
strue the statute in its context, which includes other provi-
sions of the same statute and other related statutes.").

Although neither the rules of appellate procedure
nor the Oregon Revised Statutes formally defines "supervi-
sion," related statutes provide useful context for understand-
ing that term. Specifically, ORS 137.540(1), which sets forth
the general conditions of probation, illustrates what consti-
tutes supervision. Among other things, that statute requires
a probationer to obtain permission before leaving the state or
changing employment or residence; to permit the supervising
officer to visit the probationer's work site and residence and
to inspect the residence; to answer all reasonable inquiries of
the probation office; and to report as required and abide by
the direction of the supervising officer. ORS 137.540(1)(e),
(g), (h), (k), (o).

In my view, "supervision" should be understood as
encompassing all of those requirements. A person is under
supervision not merely when the person is reporting to his or
her probation officer or when the probation officer is visiting
the person's work site or residence or directing the person to
take certain actions. A person is under supervision if he or
she is restrained from leaving the state or changing employ-
ment or residence without prior permission: that restraint
allows the probation officer to monitor the person's where-
abouts and activities. Such monitoring constitutes super-
vision.[4]

The majority's understanding of "supervision" evis-
cerates the meaning of that term, reducing it merely to active
interaction between the probationer and the supervising offi-
cer. The majority concludes that defendant was not under
supervision based on its initial (and incorrect) conclusion

---

[4] It may be that there are some forms of supervision from which a person sim-
ply cannot abscond—for example, if the person is merely required not to commit
any new offenses. This is not such a case.

that the trial court deleted the general condition requiring him to report to his probation officer after he was deported.[5] Even if the majority's premise were correct, it does not follow from the fact that defendant was not required to report that he was not under supervision. Given that supervision entails more than simply reporting, the deletion of the reporting requirement would not alter the supervisory aspect of defendant's probation.

Because defendant was under supervision, the only remaining pertinent question is whether he absconded from supervision. When defendant returned to the United States and failed to let anyone at the probation office know that he was back, and—even more significant—how he could be reached, he " 'evade[d]' " the " 'direction, inspection and critical evaluation' " of the probation office. 210 Or App at 25 (quoting definitions of "abscond" and "supervision" in *Webster's Third New Int'l Dictionary* 6, 2296 (unabridged ed 2002)). In other words, he absconded from supervision. Furthermore, he did not surrender to the authorities—his only other chance of saving his appeal. A warrant had issued for his arrest, and he was arrested on the warrant.

In short, the facts of the case neatly fit the rule in ORAP 8.05(3). *Cf. Pruett and Pruett,* 185 Or App 669, 676, 60 P3d 1094, *rev den,* 335 Or 443 (2003) (dismissing the appeal under the court's discretionary authority to dismiss

---

[5] I say that the majority's initial conclusion is wrong because ORS 137.540(1) provides that the general conditions of probation listed in that statute apply "unless *specifically* deleted by the court." (Emphasis added.) "Specifically" means "with exactness and precision : in a definite manner." *Webster's Third New Int'l Dictionary* 2187 (unabridged ed 2002). Thus, a court may delete a general condition of probation only by doing so unambiguously. The special condition of probation cited by the majority required defendant to report to his probation officer within 30 days if he legally reentered the United States, but it did not, as the majority asserts, delete the requirements of ORS 137.540(1)(o). The purpose of the special condition is not unambiguous: It could mean, by negative implication, that defendant was not required to report at all unless he returned legally to the United States, as the majority asserts. It could also mean that, even if defendant's *probation officer* did not require him to report after returning, he had to do so anyway (within 30 days) because it was ordered directly by the judge. It could also mean that his probation officer could not require him to report within fewer than 30 days after returning. The point is, the trial court did not delete the reporting requirement with the "exactness and precision" that the statute requires. Consequently, because the trial court did not "specifically" delete the conditions provided in ORS 137.540(1)(o), they remained in effect.

appeals in cases to which ORAP 8.05(3) does not apply). I would dismiss this appeal pursuant to ORAP 8.05(3).