Argued and submitted July 8, 2010, affirmed July 11, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHRISTINA ELIZABETH GOODENOW,
*Defendant-Appellant.*

Jackson County Circuit Court
054754FE; A136645

282 P3d 8

Michelle R. Burrows argued the cause and filed the brief for appellant.

Michael R. Washington, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

This is a criminal case in which defendant appeals the trial court's judgment convicting and sentencing her for three crimes—aggravated theft in the first degree, ORS 164.057; forgery in the first degree, ORS 165.013; and cheating, ORS 167.167—and ordering her to forfeit $960,843.77 in lottery winnings that she obtained by purchasing a lottery ticket with a credit card that she was not authorized to use. On appeal, defendant argues that the forfeiture violates the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.[1] For the reasons below, we conclude that the forfeiture of the winnings does not violate the Excessive Fines Clause. Therefore, we affirm.

## I.  HISTORICAL AND PROCEDURAL FACTS

The relevant facts are undisputed. At the time defendant committed her crimes, she was unemployed and had no source of income. She was caring for her children and, according to the parties, living "close to the financial edge." She obtained a Visa card issued in the name of her boyfriend's deceased mother, Cornett, and used the card to make unauthorized purchases totaling $11,366.38. When defendant made the purchases, she presented herself as Cornett; she used an identification card with her photograph and Cornett's name. Defendant's purchases included groceries and groups of lottery tickets.

One of the lottery tickets defendant purchased was a $1 million winner. Defendant claimed the prize, which was payable in installments of $50,000 per year for 20 years. Defendant collected the first $50,000 installment, receiving $33,500 after taxes. She promptly used a portion of the $33,500 to pay the balance due on the Visa account.

A grand jury indicted defendant for seven crimes—identity theft, ORS 165.800; aggravated theft in the first degree, ORS 164.057; forgery in the first degree, ORS 165.013; theft in the first degree, ORS 164.055; fraudulent use of a credit card, ORS 165.055; unlawful possession

---

[1] The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

of methamphetamine, ORS 475.894; and cheating, ORS 167.167—and two counts of criminal forfeiture, ORS 131.550 to 131.604 (providing for the forfeiture of all proceeds of prohibited conduct, which includes felonies and Class A misdemeanors). The first forfeiture count was for $10,843.77, the portion of the first lottery payment that defendant still possessed. The second forfeiture count was for $950,000, the remaining 19 lottery payments.

Pursuant to plea negotiations, defendant entered no contest pleas to aggravated theft in the first degree, forgery in the first degree, and cheating, and the charges for the other crimes were dismissed. Defendant waived her right to a jury trial on the two criminal forfeiture counts and tried them to the court on stipulated evidence. Defendant acknowledged that, for the purposes of Oregon's criminal forfeiture statutes, ORS 131.550 to 131.604, the lottery winnings were the proceeds of criminal activity and, as such, were subject to forfeiture under the statutes. But defendant argued that the forfeiture sought by the state, which totaled more than $960,000, would violate the Excessive Fines Clause of the Eighth Amendment, which prohibits the imposition of a punitive forfeiture that is "grossly disproportional" to the crimes for which it is imposed. *United States v. Bajakajian*, 524 US 321, 337, 118 S Ct 2028, 141 L Ed 2d 314 (1998). Defendant argued that the forfeiture of all of her remaining lottery winnings would be grossly disproportional to her crimes. She suggested that, given her crimes, the court could impose a forfeiture in the amount of $10,843.77 (the remaining amount of the first lottery payment).

In response, the state argued that the Excessive Fines Clause does not apply to forfeiture of criminal proceeds, and, therefore, did not apply to the forfeiture of defendant's remaining lottery winnings because the winnings were the proceeds of defendant's crimes.

The trial court concluded that all of defendant's remaining lottery winnings were subject to forfeiture under Oregon's criminal forfeiture statutes, explaining that the statutes "require[d] that * * * judgment be entered for the [s]tate." The court did not analyze whether the forfeiture was

proportional to defendant's crimes; it rejected defendant's constitutional arguments without discussion.

## II.  DISCUSSION

On appeal, defendant renews the arguments that she made in the trial court.[2] The state responds that, because the Excessive Fines Clause applies only to punitive forfeitures, *Austin v. United States*, 509 US 602, 609-10, 113 S Ct 2801, 125 L Ed 2d 488 (1993), it does not apply to forfeitures of criminal proceeds, which, according to the state, are remedial. Alternatively, the state argues that, even if forfeitures of criminal proceeds are punitive and subject to the Excessive Fines Clause, the forfeiture of defendant's remaining lottery winnings was not grossly disproportional to defendant's crimes. Thus, we address the following issues, in turn: (1) whether defendant's lottery winnings are subject to forfeiture under Oregon's criminal forfeiture statutes; (2) whether the Excessive Fines Clause applies to the forfeiture; and, if so, (3) whether the forfeiture violates the Excessive Fines Clause.[3]

A.  *Oregon's Criminal Forfeiture Statutes*

For necessary context, we begin with Oregon's criminal forfeiture statutes. Under the statutes, "all proceeds of or from prohibited conduct" are "subject to

---

[2] In addition to the arguments she made in the trial court, defendant also argues that the forfeiture of all of her remaining lottery winnings violated the Excessive Fines Clause of Article I, section 16, of the Oregon Constitution. Defendant did not preserve that argument. In the trial court, defendant relied on the Excessive Fines Clause of the Eighth Amendment; she never referred to the Excessive Fines Clause of Article I, section 16. Because defendant did not preserve that state constitutional argument, we do not address it. *See State v. Jones*, 246 Or App 412, 418, 418 n 5, 266 P3d 151 (2011) (explaining that the defendant's argument under the Oregon Constitution was not preserved where "[the] defendant never placed before the trial court *any* argument under the Oregon Constitution" (emphasis in original)).

[3] In a footnote in her appellate brief, defendant asserts that her conviction for cheating is invalid. She argues that her plea on the cheating count was not knowingly and voluntarily made because "[p]leading guilty or no contest to an offense that one is not guilty of because the requisite elements are not satisfied can never be considered a knowing and voluntary plea." Defendant does not assign error to the trial court's acceptance of her guilty plea, and we do not address it. *See Confederated Tribes (Siletz) v. Employment Dept.*, 165 Or App 65, 81 n 8, 995 P2d 580 (2000) (an alleged error cannot be raised in a footnote rather than through an assignment of error).

criminal forfeiture." ORS 131.558(6). "[F]or purposes of proceeds," "prohibited conduct" means "a felony or a Class A misdemeanor." ORS 131.550(12)(a).

The phrase "proceeds of prohibited conduct" is broadly defined as "property derived directly or indirectly from, maintained by or realized through an act or omission that constitutes prohibited conduct, and includes any benefit, interest or property of any kind without reduction for expenses of acquiring or maintaining it or incurred for any other reason." ORS 131.550(11). "Property," in turn, is also broadly defined; it is "any interest in anything of value, including the whole of any lot or tract of land and tangible and intangible personal property, including currency, instruments or securities or any other kind of privilege, interest, claim or right whether due or to become due." ORS 131.550(13).

Thus, as relevant here, Oregon's criminal forfeiture statutes provide for the forfeiture of "any interest in anything of value, including * * * [a] claim or right whether due or to become due," ORS 131.550(13), "derived directly or indirectly from * * * or realized through," ORS 131.550(11), "a felony or a Class A misdemeanor," ORS 133.550(12)(a).

Oregon's criminal forfeiture statutes do not limit the amount of property that may be forfeited as the proceeds of prohibited conduct. They do not require courts to determine whether a forfeiture of a defendant's property is proportional to the defendant's crime. ORS 131.585(1) ("The court shall enter judgment to the extent that the property is proceeds of the crime of conviction or of past prohibited conduct that is similar to the crime of conviction."). (In that respect, the statutes treat the forfeiture of the proceeds of defendants' crimes differently from the forfeiture of instrumentalities of defendants' crimes. The statutes require courts to determine whether the forfeiture of an instrumentality of a defendant's crime, such as a vehicle or building used in the commission of a crime, is proportional to the crime and identify factors to

consider in making that determination. ORS 131.585(2)(a) - (g).[4])

Oregon's criminal forfeiture statutes also do not provide for forfeiture without a corresponding criminal conviction.[5] ORS 131.582(4) ("A criminal forfeiture proceeding and the underlying criminal case must be tried in the same proceeding."); ORS 131.582(6) ("The court shall enter a judgment of criminal forfeiture if the forfeiture counsel proves beyond a reasonable doubt that the property for which forfeiture is sought is an instrumentality or the proceeds of the crime of conviction[.]"). If the owner of property subject to forfeiture can prove that he or she is a bona fide purchaser for value and did not acquiesce in

---

[4] ORS 131.585(2) provides:

"With respect to property that is an instrumentality of the crime of conviction or of past prohibited conduct that is similar to the crime of conviction, the court shall consider:

"(a) Whether the property constitutes the defendant's lawful livelihood or means of earning a living.

"(b) Whether the property is the defendant's residence.

"(c) The degree of relationship between the property and the prohibited conduct, including the extent to which the property facilitated the prohibited conduct or could facilitate future prohibited conduct.

"(d) The monetary value of the property in relation to the risk of injury to the public from the prohibited conduct.

"(e) The monetary value of the property in relation to the actual injury to the public from the prohibited conduct.

"(f) The monetary value of the property in relation to objective measures of the potential or actual criminal culpability of the person or persons engaging in the prohibited conduct, including:

"(A) The inherent gravity of the prohibited conduct;

"(B) The potential sentence for similar prohibited conduct under Oregon law;

"(C) The defendant's prior criminal history; and

"(D) The sentence actually imposed on the defendant.

"(g) Any additional relevant evidence."

[5] A narrow exception to that rule exists under ORS 131.582(7), which provides that forfeiture may take place under certain circumstances when

"the court finds that the defendant is not confined or held in custody by another jurisdiction, and that the defendant, after notice or knowledge of the fact that a warrant has been issued for the defendant:

"(a) Purposely left the state to avoid prosecution;

"(b) Declines to return to the state and allow execution of the warrant; or

"(c) Otherwise evades the jurisdiction of the court issuing the warrant."

the prohibited conduct—that is, if he or she is an innocent owner—the property is not forfeitable. ORS 131.573; ORS 131.582(9) - (11); ORS 131.588(6)(a).

In this case, defendant's lottery winnings are the proceeds of prohibited conduct; they are property derived from her crimes of conviction, all of which are felonies. As such, they are subject to forfeiture under Oregon's criminal forfeiture statutes.

Defendant argues that, although her lottery winnings are subject to forfeiture under the criminal forfeiture statutes as the proceeds of her crimes and the statutes do not limit the amount of property that may be forfeited as the proceeds of her crimes, the trial court's order that she forfeit all of her remaining winnings violates the Excessive Fines Clause. According to defendant, the Excessive Fines Clause imposes a proportionality requirement on all *in personam* criminal forfeitures, including *in personam* criminal forfeitures of the proceeds of crimes.[6] Thus, we turn to the second issue in this case, the applicability of the Excessive Fines Clause to such forfeitures.

B.  *Applicability of the Excessive Fines Clause*

The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." At the time the constitution was adopted, "'the word "fine" was understood to mean a payment to a sovereign as punishment for some offense.'" *Bajakajian*, 524 US at 327-28 (quoting *Browning-Ferris Industries v. Kelso Disposal*, 492 US 257, 265, 109 S Ct 2909, 106 L Ed 2d 219 (1989)). "The Excessive Fines Clause thus limits the government's power to extract

_____

[6] An *in personam* forfeiture is imposed in a proceeding against a person, while an *in rem* forfeiture is the result of a proceeding directly against "guilty property." *Bajakajian*, 524 US at 330-31; *Black's Law Dictionary* 807, 809 (8th ed 2004) (defining *"in personam"* as "([o]f a legal action) brought against a person rather than property"; defining *"in rem"* as "[i]nvolving or determining the status of a thing, and therefore the rights of persons generally with respect to that thing").

payments, whether in cash or in kind, as punishment for some offense." *Bajakajian*, 524 US at 328 (internal quotation marks omitted). Accordingly, the Excessive Fines Clause applies to forfeitures—payments in kind—that constitute punishments for offenses.[7] *Id.*

The United States Supreme Court considered whether an *in personam* criminal forfeiture constituted a punishment for an offense and, therefore, was subject to the Excessive Fines Clause in *Bajakajian*, 524 US 321. In that case, the respondent was criminally prosecuted for violating a federal statute, 31 USC section 5316(a)(1)(A), by failing to report that he was transporting more than $10,000 outside the United States.[8] In connection with the prosecution, the government sought the forfeiture of all of the cash the respondent had attempted to transport, $357,144. The government sought the forfeiture pursuant to a statute, 18 USC section 982(a)(1), which provided that, in imposing sentence on a person convicted of violating the reporting requirement, a court "shall order that the person forfeit to the United States any property, real or personal, involved in such offense." *Bajakajian*, 524 US at 325.

---

[7] The United States Supreme Court has not definitively held that the Excessive Fines Clause of the Eighth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment. *Compare McDonald v. City of Chicago*, ___ US ___, 130 S Ct 3020, 3035 n 13, 177 L Ed 2d 894 (2010) ("We never have decided whether the Third Amendment or the Eighth Amendment's prohibition of excessive fines applies to the States through the Due Process Clause."), *with Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 US 424, 433-34, 121 S Ct 1678, 149 L Ed 2d 674 (2001) (The Due Process Clause of the Fourteenth Amendment "makes the Eighth Amendment's prohibition against excessive fines and cruel and unusual punishments applicable to the States[.]"). Neither party raises that issue here. Therefore, we assume, without deciding, that the Excessive Fines Clause of the Eighth Amendment applies to the states through the Fourteenth Amendment. *See State v. Clark*, 124 Wash 2d 90, 102, 875 P2d 613, 618 (1994), *overruled on other grounds by State v. Catlett*, 133 Wash 2d 355, 945 P2d 700 (1997) ("Because neither party raises it, we do not reach the issue whether the federal excessive fines clause applies to state action.").

[8] 31 USC section 5316(a) provides, in part:

"[A] person or an agent or bailee of the person shall file a report * * * when the person, agent, or bailee knowingly—

"(1) transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time—

"(A) from a place in the United States to or through a place outside the United States[.]"

After the respondent pleaded guilty to violating the reporting requirement, the district court concluded that the respondent's $357,144 was subject to forfeiture under section 982(a)(1) because it was "involved in" the reporting violation, but that forfeiture of the full amount would violate the Excessive Fines Clause because it would be "grossly disproportionate to the offense in question." *Id.* at 326 (internal quotation marks omitted). Based on that conclusion, the district court reduced the forfeiture to $15,000.

The government appealed, and the Ninth Circuit Court of Appeals affirmed. The Supreme Court granted *certiorari* and, like the lower courts, concluded that the *in personam* criminal forfeiture was punitive and, therefore, subject to the Excessive Fines Clause and its proportionality requirement. In reaching its conclusion, the Court rejected two of the government's arguments that the Excessive Fines Clause did not apply to the forfeiture. Because the state has raised similar arguments here, we review the Court's analysis of them in some detail.

First, the Court rejected the government's argument that forfeitures under section 982(a)(1) are not subject to the Excessive Fines Clause because they serve "important remedial purposes." *Bajakajian*, 524 US at 329 (internal quotation marks omitted). The government argued that such forfeitures serve to "deter illicit movements of cash" and to aid the government in obtaining "information to investigate and detect criminal activities associated with that cash." *Id.* (brackets and internal quotation marks omitted). In response, the Court rejected the assertion that deterrence is a nonpunitive purpose, stating that "[d]eterrence * * * has traditionally been viewed as a goal of punishment[.]" *Id.* The Court also rejected the assertion that forfeiture of property under section 982(a)(1) is remedial, stating that it "does not serve the remedial purpose of compensating the Government for a loss." *Id.* ("Although the Government has asserted a loss of information regarding the amount of currency leaving the country, that loss would not be remediated by the Government's confiscation of [the] respondent's $357,144.").

The Court went on to note that, even if the forfeiture of property under section 982(a)(1) were remedial in part, it would still be subject to the Excessive Fines Clause. The Court explained, "Even if the Government were correct in claiming that the forfeiture of respondent's currency is remedial in some way, the forfeiture would still be punitive in part. (The Government concedes as much.) This is sufficient to bring the forfeiture within the purview of the Excessive Fines Clause." *Id.* at 329 n 4 (citing *Austin*, 509 US at 621-22). Thus, the Court established three points in the course of rejecting the government's argument that the forfeiture was not punitive: (1) the fact that a forfeiture serves a deterrent purpose does not mean that it is remedial; (2) a forfeiture that does not compensate anyone for a loss is not remedial; and (3) a forfeiture that is remedial in part and punitive in part is subject to the Excessive Fines Clause.

Second, the Supreme Court rejected the government's argument that forfeitures under section 982(a)(1) are not subject to the Excessive Fines Clause because they "fall[ ] within a class of historic forfeitures of property tainted by crime." *Id.* at 329. The government argued that forfeitures under section 982(a)(1) are akin to traditional civil *in rem* forfeitures, which are considered nonpunitive and, therefore, not subject to the Excessive Fines Clause. The Court rejected the government's comparison, explaining that traditional civil *in rem* forfeitures are considered nonpunitive because they are proceedings against property, not persons. *Id.* at 329-30 ("The theory behind such forfeitures was the fiction that the action was directed against 'guilty property,' rather than against the offender himself."). "Historically, the conduct of the property owner was irrelevant; indeed, the owner of forfeited property could be entirely innocent of any crime." *Id.* at 330; *see also The Palmyra*, 25 US (12 Wheat) 1, 14-15, 6 L Ed 531 (1827) (traditional civil *in rem* forfeitures are "independent of, and wholly unaffected by any criminal proceeding *in personam*"). Thus, traditional civil *in rem* forfeitures "[have not been] considered punishment against [an] individual for an offense."[9] *Bajakajian*, 524 US at 331.

---

[9] Although traditional civil *in rem* forfeitures have been considered nonpunitive, some modern forfeiture laws "have blurred the traditional distinction between civil *in rem* and criminal *in personam* forfeiture," *Bajakajian*, 524 US

In contrast, the Court explained, criminal *in personam* forfeitures "have historically been treated as punitive, being part of the punishment imposed for felonies and treason[.]" *Id.* at 332. Accordingly, they are subject to the Excessive Fines Clause. *Id.* at 333-34.

Applying that distinction, the Court reasoned that forfeitures under section 982(a)(1) "descend[ ] not from historic *in rem* forfeitures of guilty property, but from a different historical tradition: that of *in personam*, criminal forfeitures." *Id.* They are sought through proceedings against individuals and are imposed as punishments.

Accordingly, the Supreme Court observed that the forfeiture of the cash involved in the respondent's violation of the reporting requirement did not "bear any of the hallmarks of traditional civil *in rem* forfeitures." *Id.* at 331. The Court explained, "The Government has not proceeded against the currency itself, but has instead sought and obtained a criminal conviction of respondent personally. The forfeiture serves no remedial purpose, is designed to punish the offender, and cannot be imposed on innocent owners." *Id.* at 331-32. Therefore, the Court concluded, the forfeiture was subject to the Excessive Fines Clause. *Id.* at 333-34. In doing so, the Court expressly rejected the government's argument that the respondent's currency could be forfeited as an "instrumentality" of the respondent's crimes, explaining:

> "Instrumentalities historically have been treated as a form of 'guilty property' that can be forfeited in civil *in rem* proceedings. In this case however, the Government has sought to punish the respondent by proceeding against him criminally, *in personam*, rather than proceeding *in rem* against the currency. *It is therefore irrelevant whether the respondent's currency is an instrumentality; the forfeiture is punitive*[.]"

*Id.* at 333 (emphasis added). Thus, under *Bajakajian*, criminal *in personam* forfeitures are subject to the Excessive Fines Clause, even if, historically, the type of property to be forfeited has been subject to civil *in rem* forfeiture as "guilty

_____

at 331 n 6, prompting the Supreme Court to hold that whether a forfeiture is punitive, and, therefore, subject to the Excessive Fines Clause, does not depend on its label. "[A] modern statutory forfeiture is a 'fine' for Eighth Amendment purposes if it constitutes punishment even in part, regardless of whether the proceeding is styled *in rem* or *in personam*." *Id.*

property." In other words, it is the nature of the forfeiture, not the type of property forfeited, that controls whether a forfeiture is subject to the Excessive Fines Clause.

In this case, defendant argues that, under *Bajakajian*, the criminal *in personam* forfeiture of her remaining lottery winnings is punitive and, therefore, subject to the Excessive Fines Clause. We agree. The forfeiture in this case shares the characteristics of the forfeiture in *Bajakajian*, which the Supreme Court held was punitive. First, the state sought, and the trial court ordered, the forfeiture in a criminal proceeding against the defendant personally. Second, the forfeiture was intended to punish the defendant; it could not have been imposed on an innocent owner. ORS 131.573; ORS 131.582(9) - (11); ORS 131.588(6)(a). Although, as the state argues, the forfeiture may serve a deterrent purpose, as the Supreme Court stated in *Bajakajian*, 324 US at 329, "[d]eterrence * * * has traditionally been viewed as a goal of punishment[.]" And, third, the forfeiture serves no remedial purpose; it does not compensate the state (or anyone else) for a loss.[10] Under the criminal forfeiture statutes, forfeited property vests in the agency that seized the property, ORS 131.556, and the vesting is not contingent on the agency having suffered any loss.

The state contends that the forfeiture in this case is distinct from that in *Bajakajian* because it involves the forfeiture of the proceeds of defendant's crimes. According to the state, forfeitures of the proceeds of crimes are never punitive. We disagree. Under *Bajakajian*, criminal *in personam* forfeitures are punitive by virtue of the nature of the proceeding and regardless of the nature of the property. When the state elects to bring such a forfeiture, it is "irrelevant" that the property to be forfeited historically has been subject to forfeiture as guilty property. *Bajakajian*, 524 US at 333 (so holding with respect to instrumentalities).

The state acknowledges, as it must under *Bajakajian*, that the Excessive Fines Clause applies to

---

[10] To be clear, although we hold that the forfeiture in this case was punitive because it has the same characteristics as the forfeiture in *Bajakajian*, we are not ruling that those characteristics are *required* in order for a forfeiture to be punitive. As noted, the Supreme Court has held that civil forfeitures can be punitive. *Bajakajian*, 524 US at 331 n 6.

the forfeiture of instrumentalities. That is, the state acknowledges the possibility that the connection between a defendant's crime and property to be forfeited as an instrumentality of the crime may be so small or distant that forfeiture of the property would violate the Excessive Fines Clause. But, the state argues, that is never the case for the proceeds of a crime.

That argument fails because, as with instrumentalities, the connection between a defendant's crime and the proceeds of the crime may be so small or distant that forfeiture of the proceeds would violate the Excessive Fines Clause. If "proceeds" are broadly defined—as they are for the purposes of Oregon's criminal forfeiture statutes—they can include property that has only a small or distant connection to the defendant's crimes. For example, it might be grossly disproportionate to forfeit a defendant's entire business empire, built over a lifetime, where the defendant's crime was the theft of $1,000 used as capital to start the business. Similarly, if a defendant commingled $1,000 of stolen money with $99,000 of legitimate funds to make an investment, it might be disproportionate to forfeit the whole investment.

Accordingly, we conclude that, as defendant argues, the Excessive Fines Clause applies to the *in personam* criminal forfeiture of the proceeds of crimes. Having done so, we turn to the question whether the forfeiture in this case violates the Excessive Fines Clause.

C.  *Application of the Excessive Fines Clause*

Whether a forfeiture violates the Excessive Fines Clause depends on the relationship between the forfeiture and the crime for which it is ordered. *Bajakajian*, 524 US at 334. In order to determine whether a forfeiture violates the Excessive Fines Clause, a court must assess the gravity of the defendant's crime and the severity of the forfeiture and compare the two. *Id.* If the forfeiture is "grossly disproportional" to the gravity of the defendant's crime, then it is unconstitutional. *Id.*

When assessing the gravity of a defendant's crime, courts consider both the general characteristics of the crime and the specific characteristics of the defendant's conduct.

*Id.* at 337-38. Regarding the general characteristics, courts consider the type of crime, that is, whether it is a crime against a person or property, as well as the classification and potential sentences for the crime, which reflect the public's view, as expressed through legislation, of the gravity of the crime. *Id.* at 338-39, 339 n 14. Regarding the particular characteristics of the crime, courts consider the actual harm risked and caused by the conduct, as well as any mitigating or aggravating circumstances, such as the defendant's motive and criminal history. *Id.* at 337-39, 338 n 13.

When assessing the severity of a defendant's forfeiture, courts consider the amount of the forfeiture and the effect of the forfeiture on the defendant. *United States v. Levesque*, 546 F3d 78 (1st Cir 2008); *see also Browning-Ferris*, 492 US at 266-67 (discussing the history of the Excessive Fines Clause and its purpose of protecting defendants' livelihoods and self-sufficiency). Whether an otherwise proportional fine is excessive can depend on, for example, the financial resources available to a defendant, the other financial obligations of the defendant, and the effect of the fine on the defendant's ability to be self-sufficient. *See Bajakajian*, 524 US at 335-36.

Applying those considerations, defendant argues that the severity of the forfeiture of her remaining lottery winnings is grossly disproportional to the gravity of her crimes.

As to the gravity of her crimes, defendant argues that they are low- to mid-level felonies, as evidenced by their type, classifications, potential sentences, and crime seriousness rankings. As stated, defendant was convicted of aggravated theft in the first degree and forgery in the first degree, both property crimes, and cheating, a gambling crime. Aggravated theft in the first degree is a Class B felony, punishable by up to 10 years in prison and a $250,000 fine. ORS 164.057; ORS 161.605(2); ORS 161.625(1)(c). Forgery in the first degree and cheating are each Class C felonies, punishable by up to five years in prison and a $125,000 fine. ORS 165.013; ORS 167.167; ORS 161.605(3); ORS 161.625(1)(d). Under the sentencing guidelines, which rank the seriousness of crimes on a scale from 1 to 11, defendant's

crimes of aggravated theft in the first degree and forgery in the first degree are ranked at level 5, and cheating is ranked at level 2. OAR 213-018-0010(2); OAR 213-017-0007(25); OAR 213-017-0010(29). Under the guidelines, the presumptive sentence for each of the three crimes, for a person, like defendant, whose criminal history category is G, is probation. OAR 213-004-0001; OAR 213-005-0007.

Defendant further argues that the gravity of her crimes is mitigated by the circumstances under which she committed them, the fact that she paid the Visa bill, and her limited criminal history. Defendant asserts that, at the time of the crimes, she was a "single mother living * * * close to the financial edge and she needed to feed her children." She was, in her words, "in desperate circumstances" and "made a foolish choice." Defendant also asserts that "there are no victims in this [case]." She notes that the prosecutor herself informed the trial court at sentencing that "nobody thinks they're the victim and owed approximately $12,000 [for the amounts that defendant charged on the Visa card]." According to defendant, because Cornett was deceased and the Visa bill was paid, "[n]o one suffered any loss at all" and "there are no collateral consequences to anyone." And, finally, defendant asserts that she is "not a professional thief who [steals] identification for a living" and that she "does not fit the class of persons who are usually targeted with this extraordinary type of forfeiture[.]" She asserts that "[e]xtraordinary forfeitures * * * usually involve individuals who are involved in professional criminal enterprises[,] such as drug trafficking, money laundering[,] and racketeering."

As to the severity of her punishment, defendant argues that the forfeiture of the lottery winnings is harsh and extraordinary. She points out that the forfeiture far exceeds the maximum statutory fines for her crimes. As mentioned, the maximum fines for aggravated theft in the first degree, forgery in the first degree, and cheating are $250,000, $125,000, and $125,000, respectively, for a total of $500,000. The forfeiture of defendant's remaining lottery winnings—$960,843.77—exceeds the total statutory maximum fines for her crimes by more than $460,000.

Indeed, as defendant further points out, the forfeiture is nearly twice the maximum fine for murder, which is $500,000.[11] ORS 161.625(1)(a).

Comparing the gravity of her crimes to the severity of her punishment, defendant argues that the forfeiture of the lottery winnings violates the Excessive Fines Clause. She contends that "the penalty imposed by the trial court [through the forfeiture], is unduly harsh, in light of the gravity of defendant's offense." In particular, she contends that "the risk of or actual injury to the public from [her] conduct was zero, while the monetary value of the property subject to *** forfeiture is one million dollars."

In arguing that the forfeiture in this case is excessive, defendant compares the harms risked and caused by her crimes to the amount of the forfeiture. Respectfully, defendant's comparison is incomplete. Whether a punishment is appropriate depends not only on the harm that the defendant risked and caused, but also on the gain that the defendant realized.

As a general matter, separating a criminal defendant from the direct proceeds of her crimes is an appropriate—not an excessive—punishment. It serves legitimate retributive and deterrent purposes, and it takes from the defendant only that which she should not have received in the first place. As a punishment, its severity is minimal; it has no effect on the defendant's legitimate financial position. It simply returns the defendant to the position that she would have been in had she not committed her crimes.

---

[11] Defendant is correct that the amount of the forfeiture exceeds the maximum fines for Class B and C felonies under ORS 161.625(1)(c) and (d). However, another subsection of the same statute, ORS 161.625(3), provides that,

"[i]f a person has gained money or property through the commission of a felony, then upon conviction thereof the court, in lieu of imposing the fine authorized for the crime under subsection (1) *** of this section, may sentence the defendant to pay an amount, fixed by the court, not exceeding double the amount of the defendant's gain from the commission of the crime."

Under that subsection, a court could order defendant to pay $2 million for her crimes. Thus, contrary to defendant's argument, the forfeiture does not actually exceed what—as a matter of statutory law—a court could impose.

To illustrate: a judgment that requires a defendant to pay a fine, under circumstances in which the fine must be paid from *legally obtained funds*, is entirely different from a court order that a defendant forfeit *illegally obtained funds*. The fine has a negative effect on the defendant's legitimate financial position; the forfeiture does not.

Here, defendant's argument that the forfeiture of the lottery winnings is excessive fails to account for the fact that the winnings are the direct proceeds of her crimes. Defendant obtained the lottery ticket—her claim to the lottery prize—as a direct result of her crimes. She purchased the ticket—and more than $11,000 in other goods—by making unauthorized credit card charges that, as established by her theft conviction, she had no intent to pay. Because defendant's lottery winnings are the direct proceeds of her criminal conduct, the forfeiture of the winnings is simply not that severe. It deprives defendant of a net gain from her crimes but does not inflict a net loss.

In arguing that the forfeiture in this case is excessive, defendant contends, essentially, that there is a dollar limit on the amount of property that a defendant can be ordered to forfeit for particular criminal conduct, regardless of the amount of property the defendant gained from that conduct. We disagree. When assessing the severity of a forfeiture, we must consider not only the amount of the forfeiture, but also the source of the property to be forfeited. And here, that consideration leads to the conclusion that the forfeiture of the lottery winnings is not excessive.

We fully recognize that the amount of the forfeiture is extraordinary, but so were defendant's immediate profits from her criminal conduct. The forfeiture is of those very profits.

We emphasize that, in this case, the property to be forfeited was obtained solely as a result of defendant's criminal conduct. It is not the product of a commingling of legal and illegal resources. Given the broad definition of the "proceeds of prohibited conduct," which includes both direct and indirect proceeds, there may be cases where the forfeiture of the proceeds of a crime violates the Excessive

Fines Clause, for example, when the forfeiture is of property that has only a small or distant connection to the crime. But this is not such a case.

     Affirmed.